STROMBERG–CARLSON TELEPHONE MFG. CO. v. SIMMONS.

(Circuit Court, N. D. Georgia. February 14, 1911.)

REFORMATION OF INSTRUMENTS (§ 19*)—MUTUAL MISTAKE.

> Where parties to a contract, embraced in notes executed by one of the parties to the other, both intended that a provision should be incorporated therein, making the entire debt shown by the notes payable if there should be a failure to pay any installment of principal or interest, and such provision was omitted by a mistake of the scrivener, the contract would be reformable on the ground of a mutual mistake of facts.

> [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

In Equity. Bill by the Stromberg-Carlson Telephone Manufacturing Company against C. Jerome Simmons. On demurrer to the bill. Demurrer overruled.

Hardeman, Jones, Callaway & Johnston, for complainant.
Reuben R. Arnold, for respondent.

NEWMAN, District Judge. This case is before the court on a demurrer to the complainant's bill.

The main purpose of the bill was to have a reformation of a contract embodied in certain notes executed and delivered by the defendant to the complainant company. The bill shows that two notes were given, each falling due in installments, at considerable intervals, and

both parties intended that there should be embodied in the notes the provision which was contained in a previous agreement between them that:

"On the nonperformance of any of the conditions herein named, or on the nonpayment of any of the installments of interest or principal as same shall fall due, as hereinabove provided, this whole obligation shall immediately become due and payable and the said Stromberg-Carlson Telephone Manufacturing Company, its president, or treasurer, is hereby given full power and authority to sell and assign and deliver the whole or any part of the above-named security, or any substitute therefor, or any addition thereto," etc.

It is alleged that this provision, making the entire indebtedness shown by the notes due and payable if there should be a failure to pay any installment of principal or interest, was omitted from the notes by a mistake of the scrivener, that it was a mutual mistake, and that both the complainant's representative, acting for it in taking the notes, and C. Jerome Simmons, in signing the notes, believed at the time the same were executed and accepted that they contained this provision. It is said that it was either the excusable mistake of the complainant's representative, who prepared the notes, in dictating the same to a stenographer, or the mistake of the stenographer in transcribing the notes, by which this provision was omitted, and that Simmons, in signing the same, acted upon the belief that this provision was contained in the notes. It is averred:

"Your orator is advised and believes, and so avers, that said C. J. Simmons did not discover the omission of the clause hereinabove referred to from said notes, but believed that said notes were in strict accordance with the terms of said agreement and so intended."

It is then averred that, if Simmons knew of the omission of this clause from the notes and failed to call complainant's attention to the same, he was guilty of a fraud which would justify the reformation of the notes.

It is further alleged that Simmons, after the failure to pay some of the installments as they matured, in writing referred to the whole amount of the notes as being due; this in a letter to the complainant, in the following language:

"I hand you herewith $6,000.00 par value of gold mortgage bonds of the Atlanta Tel. & Tel. Co., to be held by you as additional collateral to my past due notes aggregating $139.921.57."

The bill has recently been amended, and some of the allegations referred to are contained in the amendment, which amplifies somewhat the allegations of the original bill and contains more definite and specific allegations as to the mutual mistake of the parties. This allegation is contained in the amendment:

"This provision occupies the space of just one line in the said agreement, and would have occupied the space of just one line in said notes; and your orator avers that the same was omitted from said notes without intention on the part of said McCann (plaintiff's representative closing up the transaction and taking the notes); and your orator can only explain the omission by the suggestion that either said McCann in dictating said notes to his stenographer skipped one line in reading from said agreement, or said stenographer skipped one line in transcribing his stenographic notes. Such an occurrence is not unusual."

The bill states a case justifying the reformation of this contract if the allegations contained therein shall be properly proven. It seems to me immaterial as to what had been done with reference to the agreement between the parties antedating the notes, provided it was the intention of both parties that a certain thing contained in that paper, or in any paper, should be embodied in the notes which are the subject-matter of this proceeding. Complainant could hardly be charged with laches, taking the allegations of the bill to be strictly true, as we must on this demurrer.

It is conceded by both parties, as, of course, it must be, that a mutual mistake of fact is a well-recognized ground for reformation of a contract, and this bill, it seems to me, clearly states a case of such mutual mistake of fact.

The demurrer to the bill must be overruled.